## BOWDOIN *a.* COLEMAN.

*New York Superior Court; General Term, November,* 1856.

UNDERTAKING.—ASSIGNMENT.—DELIVERY.—AMENDMENT ON
APPEAL.—JOINDER OF PARTIES.

An assignment by a defendant who prevails in an action of claim and delivery, of
the judgment recovered by him and all moneys to be obtained by means thereof
or by any proceedings to be had thereon, transfers to the assignee any undertaking
executed in the action upon requisition made for the delivery of the property to
plaintiff; and the assignee may maintain an action upon such undertaking.

Where, in action upon an undertaking given on the part of plaintiff in an action of
claim and delivery, by an assignee of defendant, the undertaking is produced
upon the trial, a delivery of it to the promisee pursuant to section 423 of the
Code may be presumed.

Upon appeal to the general term, the court may treat the pleadings as having been
amended so as to conform to the facts proved, in any respect in which the court
ought clearly to allow an amendment upon application at special term.

In an action brought upon an undertaking given upon a requisition in an action of
claim and delivery, by assignees of only a portion of the original promisees, there
is a defect of parties ; all the promisees should be represented.

But the objection to such defect is taken too late if raised for the first time upon
appeal from a judgment upon a verdict for plaintiffs.

Appeal from a judgment upon a verdict for plaintiff.

This action was brought by George R. J. Bowdoin, Jeremiah
Larocque, Samuel L. M. Barlow and Joseph Larocque, against
Thomas J. Coleman and James McGregor, jr.

The complaint set forth that on June 3, 1850, at the city of
New York, the defendants executed their certain undertaking
in a certain action in the Superior Court, wherein John H.
Keyser was plaintiff, and William H. Harbeck, John H. Har-
beck, Samuel Ward, Rodman M. Price and Louis Dietz were
defendants, in the following words and figures.

TITLE OF THE CAUSE :—

Whereas the plaintiff in this action has made an affidavit
that the defendants therein wrongfully detain certain personal
property in the said affidavit mentioned, of the value of eight
thousand and fifty dollars, and the plaintiff claims the imme-

diate delivery of such property, as provided for in the second chapter of the seventh title of the second part of the Code of Procedure:—

Now, therefore, and in consideration of the taking of the said property, or any part thereof, by the sheriff of the city and county of New York, by virtue of the said affidavit and of the requisition thereupon indorsed, we, the undersigned James McGregor, jr., of the city of New York, patentee, and Thomas J. Coleman, of the same place, broker, do hereby undertake and become bound to the defendants in the sum of sixteen thousand one hundred dollars, for the prosecution of the action of the plaintiff in the Superior Court of the city of New York, against the defendants, for wrongfully detaining the said property, for the return to the defendants of the said property, or so much thereof as shall be taken by virtue of the said affidavit and requisition thereupon indorsed, if a return thereof shall be adjudged, and for the payment to them of such sum as may for any cause be recovered against the plaintiff in this action.

Dated New York, June 3, 1850.

T. J. COLEMAN,
JAMES McGREGOR, JR.

The complaint further alleged that subsequently at a general term of the Superior Court, Ward and Price, two of the defendants in the action in which the undertaking was given, recovered judgment against Keyser for $395 30—that execution was issued and returned unsatisfied,—that Ward and Price assigned to the plaintiff the judgment and all sums that might be had or obtained by means thereof, or any proceedings to be had thereon,—and that plaintiffs were the lawful owners and holders of that judgment.

The answer denied the execution of the undertaking,—denied the sheriff's return that Keyser had not property out of which the judgment might have been satisfied,—that there existed any such judgment as was set up in the complaint,— and that plaintiffs were owners of the claim. It then set up as a bar to the action a judgment obtained in March, 1855, against the defendants in this action, for $474 88, upon the same undertaking, in an action in which William H. Harbeck

and John H. Harbeck were plaintiffs. The answer also set up champerty; but no evidence was offered to support this defence on the trial.

Upon the trial the proceedings in the action of Keyser *a.* Harbeck, in which the undertaking in suit was given, were proved.

The defendant Dietz was not served with a summons in that action, and never appeared in the action. The members of the firm of Harbeck & Co., appeared and put in a separate defence; and the same was done by Ward and Price. A verdict was taken for the plaintiff Keyser, subject to the opinion of the court at general term; and that court set aside the verdict, and declared judgment for the defendants. It was then adjudged "that the defendants William H. Harbeck and John H. Harbeck recover against the plaintiff their costs and expenses, adjusted, at the sum of $382 17,—and that the defendants Ward and. Price recover against the plaintiff their costs adjusted at $395 30,—and that the said defendants respectively have execution therefor."

It was admitted on the trial, that this action (of Keyser *a.* Harbeck and others) was the action in which the undertaking was executed. The undertaking was produced in evidence by the present plaintiffs; and it was further admitted by the plaintiffs' counsel, that an action had been brought upon it by William H. Harbeck and John H. Harbeck, who recovered a judgment for $474 88 in March 1855, against the defendants in this action; which judgment the defendant Coleman had paid.

In August, 1850, an execution was issued in favor of the original defendants Ward and Price against Keyser, for the amount of $395 30, the costs adjudged to them, and returned unsatisfied.

In March 21, 1855, Ward and Price executed an instrument of assignment to the present plaintiffs, reciting that they had recovered a judgment on July 17, 1854, against John Keyser, for the sum of $395 30, and assigning and transferring to them "and their assigns the said judgment, and all sum and sums of money that may be had or claimed by means thereof, or on any proceedings to be had thereupon;" constituting them law-

ful attorneys to sue out executions, and take all lawful ways for the recovery of the money due or to become due on the said judgment; and on payment to acknowledge satisfaction or discharge of the same.

The plaintiffs having rested, the defendants moved to dismiss the complaint upon the following grounds among others.

1. Because there was no averment in the complaint, nor any proof given upon the trial that the undertaking was ever delivered to any one.

2. Because the undertaking was a joint and not a several undertaking, and the rights of the promisees were joint; and therefore an assignment by only two of the five promisees gave no right of action to the plaintiff.

3. Because the judgment of W. H. and J. H. Harbeck was a bar to a recovery in this action.

4. Because the complaint was deficient in not averring a demand from Keyser before suit,—a right in plaintiffs to sue upon the undertaking,—a consideration for the undertaking,—and because no proof had been given of either of these facts, or of any consideration for the assignment of the judgment to the plaintiffs.

This motion was denied, and defendants excepted.

Thereupon, the defendants offering no evidence, the judge directed the jury to find a verdict for the plaintiffs, which they did, in the sum of four hundred and forty five dollars and fifteen cents.

The defendants now appealed from the judgment upon this verdict.

*Pierrepont & Stanley*, for appellants. I. The complaint does not state facts sufficient to constitute a cause of action, inasmuch as it contains no averment that the undertaking was ever delivered. Before delivery, the undertaking was not a binding contract. (3 *Kent's Comm.*, 453; 1 *Parsons on Contracts*, 399.) The word "executed" does not imply delivery. (2 *Rev. Stats.*, 22, 3d ed.; *Code*, §§ 209, 211; 1 *Johns. Cases*, 114; 18 *Wend.*, 581; 2 *Starkie on Ev.*, 271; *Webster's Dict.*)

II. There was no *evidence* of its delivery to the promisees.

Its possession by plaintiffs was not legal evidence of its delivery to Ward & Price. The production of a deed by the grantee is *prima facie* evidence of its delivery to him, but a production by a third person is not evidence of its delivery to the grantee. (1 *Greenl. on Ev.*, § 38.)

III. There was presumptive evidence that the undertaking never was delivered.

IV. The complaint does not allege a consideration for the undertaking. The consideration recited in the undertaking is the taking of the property claimed by the sheriff. Considered as a mere consideration, it is purely *future* and *executory*, and the taking of the property should therefore have been averred. (Opinion of Justice Woodruff, in Slack *v.* Heath, 1 *Abbotts' Pr. R.*, 338 ; 1 *Chitty's Pleadings*, 323.)

V. The undertaking cannot be supported as given in pursuance of a statute, and therefore needing no other consideration nor allegation of one, because the complaint does not contain any averment, or set up any facts which show that the *action in which it was given was within the statute.* It should contain an averment that it was given in an action brought to recover the possession of personal property, or facts equivalent. (Gould *v.* Warren, 3 *Wend.*, 54 ; Phillips *v.* Price, 3 *Maule & S.*, 180 ; 1 *Bos. & Pull.*, 381, *n.*) The recitals in the undertaking are such as are contained in a replevin bond ; but that is not an averment of their truth, or that this undertaking was given in such an action. In Shaw *v.* Tobias, (3 *Comst.*, 188,) Loomis *v.* Brown, (16 *Barb.*, 325,) and King *v.* Gibbs, (20 *Wend.*, 502,) the circumstances were averred.

VI. The undertaking does not appear to have been a statute security, as it does not appear to have been approved by the sheriff, as required by section 209 of the Code. (Burns *v.* Robins, 1 *Code R.*, 62.)

VII. The "*taking of the said property*" was not a mere consideration ; it was more ; it was a condition precedent to any liability of the promisees. The promisees *intended* that a delivery of the property should be a condition precedent to their liability, and made it so by the terms of the undertaking. No precise words are requisite to constitute a condition. (2 *Parsons on Contracts*, 39 ; 1 *Chitty*

*on Plead.*, 353.) The words by which conditions prece-
dent are usually created are,—" in consideration of," " pro-
vided," " doing," " performing," " upon condition." Whether
contracts contain a condition, does not depend on any for-
mal arrangement of the words, but on the reason and
sense of the thing as it is to be collected from the whole con-
tract. (Ritchie *v.* Atkinson, 10 *East*, 295.) Courts seem
to agree that the decision must always depend upon the
*intention of the parties* to be collected in each particular
case from the terms of the agreement itself, and from the
subject matter to which it relates. (2 *Parsons on Con-
tracts*, 39.)

VIII. There is no averment in the complaint, of the plain-
tiff's *title* to the undertaking. There is no averment that it
was ever in the possession of Ward and Price, and it is not
referred to in the assignment. A fatal objection to the aver-
ment in the complaint being construed to be an assignment
of the undertaking, is that it appears on the face of the com-
plaint that there is a discrepancy between the parties to
whom the undertaking is executed, and the parties who
assign.

IX. There was no *evidence* of the plaintiff's title to the
undertaking. The undertaking was a chose in action. The
undertaking was to the promisees solely, and not to them and
their assigns. Possession of such a chose in action, or of any
chose in action, except negotiable paper, is not evidence of
title.

X. The undertaking is joint and not several, and the rights
of the promisees are joint only, and an assignment by two
gave no right of action to the plaintiffs. Whenever a right is
given to two or more, it is the general presumption of law
that it is a joint right. (1 *Parsons on Contracts*, 11 ; Hill *v.*
Tucker, 1 *Taunt.*, 7 ; Hatsall *v.* Griffith, 4 *Tyr.*, 487 ; King *v.*
Hoare, 13 *Mees. & W.*, 499 ; English *v.* Blundell, 8 *Carr. &
P.*, 332 ; *Shepard's Touchstone*, 375.) A contract with seve-
ral persons for the payment to them of a sum of money is
a joint contract with all, and all the payees have a joint
interest, so that no one can sue alone for his proportion. (1
*Parsons on Contracts*, 12 ; Lane *v.* Drinkwater, 5 *Tyr.*, 40 ;

Byrne v. Fitzhugh, 5 *Tyr.*, 54; Robertson v. Smith, 18 *Johns.*, 460 : King v. Hoare, 13 *Mees & W.* 494; Marshall v. Smith, 15 *Maine R.*, 17 ; 1 *Chitty*, 8, 10, 11 ; *Code*, § 119 ; 1 *Saunders*, 153 ; 1 *Burill's Pr.*, 60.) 1. The rule is that covenants are to be construed according to the interest of the parties appearing on the face of the deed. And this is not a rule of law but a *rule of construction* merely, and it cannot be supposed that such a rule was ever laid down as could prevent parties, whatever words they might use, from covenanting in a different manner. (Keightley v. Watson, 3 *Exchequer*, 716 ; Sorsbie v. Parke, 12 *Mees. & W.*, 146.) 2. The rule that the rights of promisees are to be construed to be joint or several, according to their interest, applies only to the interest *in the contract*, and not to any sum of money or other benefit to be received from it, and their interest must appear on the face of the deed. (1 *Parsons on Contracts*, 14, & n. ; Anderson v. Martindale, 1 *East*, 497 ; English v. Blundell, 8 *Carr. & P.*, 332 ; Hopkinson v. Lee, 6 *Q. B.*, 971.) 3: A bond cannot be construed to be several by reason of several interests if it be expressly joint. (Pearce v. Hitchcock, 2 *Comst.*, 390 ; Arnold v. Tallmadge, 19 *Wend.*, 527.) 4. The Code has not changed the law as to the *rights of action ;* it only affects *remedies.* If the contract is in its nature joint, all the promisees must join, for they are *united in interest*, as partners are united. Sections 111 and 274 of the Code do not affect legal rights created and vested by the terms of the contract. (Fullerton v. Taylor, 6 *How.*, *Pr. R.*, 259.) Courts of justice can only carry into effect such contracts as parties have made.

XI. The judgment of W. H. & J. H. Harbeck is a bar to a recovery in this action. (Robertson v. Smith, 18 *Johns. R.*, 460.)

*J. Larocque*, for respondent.—I. The undertaking not being under seal, no averment of delivery to any one is required. It was produced from the possession of the plaintiffs in this action on the trial. (*Code*, § 423.)

II. The instrument sued upon is a statutory security, and in the precise form prescribed by statute. (*Code*, § 209.) In construing it, therefore, the effect intended by the section of the

statute under which it was drawn is to be given to it. The
action in which it was given (before that nomenclature was
abolished by the Code) was called an action of tort. It is the
same thing still. The Code in this, as in a majority of instan-
ces, has changed the name, but not the thing. Torts are
always joint and several. Section 274 of the Code, allowing
separate and distinct judgments as to different parties, is only
declaratory of the law in such cases as it existed before the
Code. It would be absurd, therefore, to give such a construc-
tion to the undertaking, and the section under which it is fra-
med, as would render it absolutely ineffectual in a majority of
instances. It must be construed, therefore, as a joint and sev-
eral security.

III. If the security is to be construed as a joint and several
security, the judgment in favor of the Harbecks can be no bar
to a recovery in this action.

IV. No proof of any demand was necessary. The execution
returned *nulla bona* was proved.

V. The assignment to the plaintiffs was of the judgment in
favor of Ward and Price, in the action in which the undertta-
king was given, " and all sums of money that may be had or
claimed by means thereof, or on any proceedings to be had
thereupon." This language is certainly broad enough to em-
brace the remedy upon the undertaking.

VI. The undertaking recites its own consideration.

VII. The assignment to the plaintiffs shows a consideration.
They were the attorneys, besides, of Ward and Price, and enti-
tled to the very costs for which the judgment was rendered.

BY THE COURT,* HOFFMAN, J.—The case, in our opinion,
turns upon the decision of three questions.

1. Whether the right of Ward and Price to sue upon the
undertaking, passed to the plaintiffs in this action, by the
assignment of March 21, 1855.

2. Whether the complaint is sufficient, and whether the
alleged defect can now be taken advantage of.

3. Whether Ward and Price could have sued upon the
undertaking separately. If they could not, of course the plain-

* Oakley, Ch. J., and Hoffman and Slosson, J. J.

tiffs cannot. And this question also involves that of the effect of the action by John H. and William H. Harbeck.

1. It seems to us clear that Ward and Price, having in fact a separate judgment for a different sum, with an award of execution in their separate favor, could assign and have assigned this right to the plaintiffs. As against Keyser, the benefit of the judgment passed to them, with every right to recover the demand from him by execution or supplementary proceedings. (*Code*, § 274).

We think also that the assignment is sufficient to transfer any right which Ward and Price had upon the undertaking. That was for the payment of " such sum as may for any cause be recovered against the plaintiff." The sum of $395 30 is adjudged to be paid to these defendants by the plaintiff. The assignment transfers that debt, which the sureties have covenanted to pay. It is a sum of money *claimed* by *means of the* judgment assigned, though claimed in form upon the undertaking. When the debt is assigned, the security incidental to it, and given in contemplation of its arising, must follow the debt. The principle is founded in the cases holding that the assignment of a debt secured by a mortgage passes the mortgage, as well as in other authorities establishing a similar doctrine. (10 *Smedes & Marshall*, 631 ; Curtis *v.* Tyler, 9 *Paige*, 432).

We conclude, that if the undertaking had been executed to Ward and Price alone, the assignment to the plaintiffs of the judgment would have transferred the right to it.

2. The second question relates to the sufficiency of the complaint. It is objected that there is no averment of the plaintiff's title to the undertaking, or of their right to bring the action ; no averment or proof of a consideration for the undertaking; no averment of a delivery to the assignors; and no averment or facts stated, to show that the action in which the undertaking was given was within the statute.

The decision of the Common Pleas in the case of Slack *a.* Heath, (1 *Abbotts' Pr. R.*, 334), which has been cited, is almost precisely in point, and would settle these questions against the defendants. Mr. Justice Woodruff however dissented. No proof had been given at the trial, but the case

came up on a motion to dismiss the complaint as not showing a good cause of action, which motion had been denied, and the jury directed to find for the plaintiff. The learned judge who dissented, stated the question to be,—"Whether the judge was warranted in charging the jury, that upon the admitted facts stated in the complaint, and without even the production of the alleged undertaking, the plaintiff was entitled to recover." "It seems to me plain that unless there is enough to show on the complaint, that the undertaking was given and received under section 211 of the Code, the plaintiff has failed to show a cause of action." The defect was in not averring that the bond was taken in and for the prosecution of an action of replevin; now claim and delivery.

Without expressing an opinion upon the point as it was nakedly presented in Slack *a.* Heath, this case presents facts which may authorize a decision consistently with the dissenting opinion. The undertaking was produced at the trial by the plaintiffs. And here a section of the Code not noticed in the argument is of some moment. Section 423 directs that undertakings in cases of claim and delivery shall be delivered by the sheriff to the parties respectively for whose benefit they are taken. A delivery enjoined by law may be inferred. This meets one of the defendant's points.

Again, it was admitted on the trial, that the action in which the undertaking was given, was the action of Keyser *a.* Harbeck, and the pleadings, proceedings and judgment in that action are in evidence here, that that was an action of claim and delivery. The case then as made upon the evidence, combined with the complaint, answers the objection in point of fact, assuming it to have been a valid one upon demurrer. Section 173 of the Code appears then to apply and to sanction an amendment, so as to conform the pleadings to the proofs. We cannot doubt that if the plaintiff had applied at the trial to amend his complaint by inserting an allegation that the undertaking was given in an action of claim and delivery commenced under section 206 of the Code, and was given pursuant to section 209, the judge would have been bound to permit it. The question is whether on appeal, the general term may not order it to be done or treat it as done.

Section 173 of the Code provides that the court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading or proceeding, by, &c., *or*, when the amendment does not substantially change the claim or defence, by conforming the pleading or proceeding to the facts proved. The authorities we have referred to are as follows.

In Rayner *v.* Clark, (7 *Barb.*, 582), in the fifth district, the action was upon a bond given upon the arrest of Clark upon attachment for contempt. The complaint was defective in not connecting the plaintiff with the attachment proceedings, and showing how and to what extent he was aggrieved by the acts of the defendant. A judgment had been ordered upon a frivolous answer and an assessment of damages. Judgment was entered upon this and an appeal taken. The court considered the complaint defective; that the consequence would be that the plaintiff must be placed in the same situation as he was in when the answer was stricken out. He could then have got leave to amend, and there was no good objection to granting the same relief then which he could have had on special motion. Such relief was granted in the order.

In Clark *v.* Daly, (20 *Barb.*, 67), section 173 was referred to. It was observed that whether an amendment should be ordered at general term and without formal notice of motion for that purpose, or on notice as a special motion, was a question of practice not entirely settled. The remarks of Justice Duer in Gunter *v.* Catlin (11 *N. Y. Leg. Obs.*, 209) were quoted. And the court conclude,—" that where the amendment is only to conform the pleadings to the facts specifically found by the court, and where the record furnishes the only ground for or against the amendment, a motion is quite unnecessary." And an order was made affirming the judgment, with costs, with liberty to the plaintiff to amend his complaint. The amended count should set out the original contract as in the first count, aver that an extension of the time of performance until October 1, 1853, had been agreed upon, and a readiness to fulfil on that day.

In Bate *v.* Graham (1 *Kern.*, 237) the court say,—" If the complaint had been demurred to, for not stating facts sufficient to constitute a cause of action, we do not see how it could have

been sustained." The defect was that a creditor brought an action to set aside an alleged fraudulent sale of personal property by a testator, without averring that the executor refused to impeach it, or had supported it. The answer of the executor supplied the defect, insisting that the sale ought not to be set aside. And the Court of Appeals held, that the defect should be deemed supplied under section 173, on the ground that the court below should have permitted or ordered an amendment.

In Brown *v.* Cole (1 *E. D. Smith's C. P. R.*, 265) the Court of Common Pleas express the opinion that the general term, as a mere appellate tribunal, ought not to order amendments of this nature, and this in a case in which it thought that an application at special term, after a referee's report, would have been successful. This we understand is the general rule adopted in that court.

Section 148 of the Code indeed permits an objection that the complaint does not state facts sufficient to constitute a cause of action, to be taken in some other way, and at some other stage of the cause than upon demurrer or answer. The omission so to take it, is not a waiver. It might have been taken formerly by motion in arrest of judgment.* This proceeding is not now allowable in practice. But we will assume that it is an objection which may be taken on appeal from a judgment. (7 *Barb.*, 582).

We may also notice section 172, by which after the decision upon a demurrer either at general or special term, the court may allow the party to plead in upon terms. The general tenor of the Code undoubtedly is, to consider *upon an appeal* the general term as simply a revisory tribunal, to act upon the record or case as it finds it, and to affirm, reverse or modify the judgment or order in the respect mentioned in the notice of appeal, and as to any or all the parties. It possesses also the additional power of relieving any intermediate order involving the merits, and affecting the judgment.

But the decision of the Court of Appeals seems to warrant this court, as it would that court, to consider the amendment suggested, as in fact made, or to disregard it. If the counsel

---

* Compare Snell *a.* Snell, *Ante*, 426.

of the plaintiff considers himself safe under that authority, he may take an affirmation of the judgment at once. We do not consider ourselves as warranted in reversing it upon the ground suggested. If the counsel should deem it prudent to apply for an amendment at special term, he can do so, and have the affirmation of the judgment here suspended.

3. The next question is whether the plaintiffs can sue upon this undertaking without making the other obligees or promisees parties. The leading cases upon this point, irrespective of the Code, are as follows. Engs *v.* Donnithorne, (2 *Burr.*, 1190;) Sorsbie *v.* Park, (12 *Mees & W.*, 146;) Knightly *v.* Watson, (3 *Exch. R.*, 716;) (*Shepard's Touchstone, by Preston*, 166;) Ehle *v.* Purdey, (6 *Wend.*, 629;) Dean *v.* Hitchcock, (2 *Comst.*, 388.) See also the authorities cited in Platt on Covenants, 123, *et seq.*

Lord Mansfield in the case from Burrows, says, "The language of severalty or joinder, and not the interest is the test of the quality of the covenant *quoad* covenantors." And the same rule governs as to covenantees. It has been held in a series of cases, says Mr. Parsons, that the interest which the covenantees take by the covenant, quite irrespective of the words of severalty or joinder, is the decisive test. But the correct rule, as stated by Mr. Preston, is that by express words indicative of the intention, a covenant may be joint or joint and several to or with the covenantors or covenantees, notwithstanding the interests are several. Where the words are ambiguous, they will be construed according to the interest.

In Knightly *v.* Watson, (3 *Exch. R.*, 716), Pollock, Baron, said, "The rule is, that a covenant cannot be treated as joint or several at the option of the covenantee. If a covenant be so constructed as to be ambiguous, that is, so as to serve either the one view or the other, then it will be joint if the interest be joint, and it will be several if the interest be several. On the other hand, if it be in its terms *unmistakably* joint, then although the interest be several, all the parties must be joined in the action. So if the covenant be made clearly several, the action must be several, although the interest be joint. It is a question of construction. See also, Ehle *v.* Purdy, (6 *Wend.*, 629).

In Pearce *v.* Hitchcock, (2 *Comst.*, 388,) upon an attachment under the absconding debtor act, the defendant executed

to the plaintiffs and to Peter V. Lane, William B. Guild, and Ziba N. Kitchen, (three other creditors who had come in under the attachment,) a bond in double the amount sworn to by all the attaching creditors, and conditioned to pay to each of the attaching creditors the amount justly due to him from said Condit and Peck. The declaration set forth the indebtedness of these parties to the plaintiffs, and concluded with the usual averments of the forfeiture of the bond, &c. On demurrer for non-joinder of all the attaching creditors, the Common Pleas on the authority of Arnold *v.* Talmadge, (19 *Wend.,* 527,) held the objection fatal. On appeal, Chief Justice Jewett said, that at the common law the objection would be decisive. He states that the correct rule was laid down by Gibbs, C. J., in James *v.* Emery, (5 *Price,* 533,) with the qualification stated by Mr. Preston. "That rule is, that a covenant will be construed to be joint or several according to the interest of the parties appearing upon the face of the deed, *if the words are capable of that construction;* not that it will be construed to be *several* by reason of *several interests,* if it be expressly joint. I think that is the true distinction. In this case although we can see from the recitals in the bond that the obligees had separate and distinct interests, yet it is expressly joint, and the words of it will not admit it to be construed as a several bond. Therefore by the rule of the common law, the action could not be sustained, if all are living, in the names of any member of the obligees less than all." He then proceeds to determine that the statute (2 *Rev. Stats.,* 12, § 57,) created an exception to the rule, and enabled the plaintiffs to sue for their separate interests. Arnold *v.* Talmadge is overruled.

Mr. Justice Bronson dissented as to this latter point, but repeated the rule as stated by the presiding judge with equal precision. The covenant will be construed to be joint or several, according to the interest of the parties appearing on the face of the deed, if the words are capable of that construction; but it cannot be construed to be several by reason of several interests, if it be expressly joint."

I assume, therefore, that upon demurrer to this complaint, the objection would be good. The whole frame of the under-

taking is a responsibility to the five defendants named in the title, without a word to import a separate interest; and to treat it as on its face a disjunctive liability, as facts might afterwards occur, would be contrary to sound rules of pleading.

But the objection is one of a non-joinder of proper parties, and admitting it to have been ground of arrest of judgment before the Code, yet sections 144, 147, 148 apply, and settle that it is too late now to take the objection, as it does not go either to the jurisdiction, or to show the entire want of a cause of action.

The remaining point on the part of the defendant, is the effect of the judgment in favor of the Harbecks upon the undertaking, and payment of the amount recovered by them. This is set up, in the answer of the defendant Coleman, as a bar.

If plead as a former judgment, the answer to its availability is, that it is not between the same parties, nor in point of fact for the same cause of action. That cause of action was separated by the judgment of the general term, and made distinct for one sum in favor of the Harbecks, and for another in favor of the present plaintiffs.

Nor can it be set up as a payment or satisfaction, for the same reason. Another reply is, that had the action been brought in the names of all the promisees in the undertaking, and upon answer, or evidence, all the facts now developed had been made out, the judgment could have been in favor of some of the plaintiffs, namely, those now suing, and against the others. (*Code*, § 274). The result which would then have been reached is precisely the same as is attained in the present suit.

We consider that the judgment must be affirmed, with costs on the appeal, but the plaintiffs may apply as before suggested, if so advised.